674 F.2d 296
 Howard LeMELLE, Petitioner,
v.
B. F. DIAMOND CONSTRUCTION COMPANY and Aetna Casualty &
Surety Company, and Director, Office of Workers'
Compensation Programs, United States
Department of Labor, Respondents.
 No. 81-1559.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 11, 1981.
Decided March 25, 1982.
 
 John H. Klein, Norfolk, Va., Mark C. Walters, Washington, D. C. (Breit, Rutter & Montagna, Norfolk, Va., on brief), for petitioner.
 Ralph E. Lawrence, Norfolk, Va. (White, Johnson & Lawrence, Norfolk, Va., on brief), for respondents.
 Before BUTZNER, RUSSELL and SPROUSE, Circuit Judges.
 SPROUSE, Circuit Judge:
 
 
 1
 Howard E. LeMelle appeals from the decision of the Benefits Review Board (Board) of the Department of Labor that he was not entitled to benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq. (LHWCA). At issue is whether a construction worker employed in building a bridge over navigable water, designed to benefit both highway traffic and river navigation, is engaged in maritime employment within the meaning of the LHWCA. We hold that he is and reverse the determination of the Board.
 
 
 2
 LeMelle was employed by B. F. Diamond Construction Co. as a concrete finisher on the James River Bridge project at Newport News, Virginia. The purpose of the project was to demolish and replace the old James River Bridge. Both the old and new bridges contained a stationary section and a "lift" or draw section that could be raised to allow water traffic to pass through.
 
 
 3
 LeMelle was working on a fixed section of the bridge approximately one mile from shore and eight to ten feet above the water. He was pouring and vibrating concrete inside a form on the piling closest to the draw section of the bridge. He was transported to work by boat and was carried ashore by tugboat after his injury before he could be transported to a hospital. During his work, he had been required to wear a life jacket and was continually over the water.
 
 
 4
 The James River, at the site of the bridge, is indisputably navigable. The United States Coast Guard was consulted in the planning of the bridge project and a Coast Guard official concluded:
 
 
 5
 Navigation of the James River through the bridge site includes ocean going ships, tugs with tows, and a wide range of pleasure craft from small power boats to large cabin cruisers and sailboats.
 
 
 6
 Both the Coast Guard and the Virginia Department of Highways were required to comment officially on various aspects of the project. The Coast Guard indicated that the improved bridge would be an aid to navigation:
 
 
 7
 The proposed bridge provides a 100 feet more horizontal clearance than the existing bridge. The additional horizontal clearance allows more space for use by vessels passing each other beneath the bridge and reduces the chances of a vessel collision with the bridge. The proposed bridge provides 10 feet more vertical clearance than the existing bridge which is expected to eliminate most draw openings except for ocean going ships.
 
 
 8
 The Department of Highways' statements were of the same tenor-that the new lift span was designed to be, among other things, an aid to navigation.
 
 
 9
 The LHWCA, as it was amended in 1972, requires an injured worker, in order to be eligible for benefits, to qualify under both a situs test and a status test. Pfeiffer Co. v. Ford, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979); I.T.O. Corporation of Baltimore v. Benefits Review Board, 542 F.2d 903 (4th Cir. 1976), modified en banc, 542 F.2d 903 (4th Cir. 1976). That is, the injury must occur upon the navigable waters of the United States as defined by the Act and the claimant must have the status of an employee as defined in the Act. The parties here agree that the situs requirement for LeMelle's claim is satisfied. The only contested issue is his status as a covered employee. Section 2(3) of the LHWCA as amended in 1972 provides:
 
 
 10
 The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.
 
 
 11
 33 U.S.C. § 902(3).
 
 
 12
 The respondents Diamond and Aetna urge, and the majority of the Board found, that LeMelle was not engaged in maritime employment, and therefore was not an employee covered by the Act. The Board held that "a claimant's employment must have a realistically significant relationship to maritime activities involving navigation and commerce over navigable waters in order for that employment to be deemed maritime employment under Section 2(3)." The Board's opinion, while admitting that the new bridge would be an aid to navigation, said:
 
 
 13
 However, the James River Bridge, like all bridges, is a means of land transportation, not maritime commerce. As claimant points out, the bridge was being constructed in a manner to minimize its actual obstruction of maritime traffic. Nevertheless, the very presence of a bridge obstructs navigation, serves no maritime purpose and in no way benefits navigation and commerce.
 
 
 14
 We do not agree with that rationale and hold that the work performed by LeMelle was maritime employment as defined in section 2(3). It is not necessary to relate again the tortured history of employee coverage under the LHWCA, except to note that bridge construction and demolition workers employed over navigable water were covered prior to the 1972 amendments. Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942); Hardway Contracting Co. v. O'Keefe, 414 F.2d 657 (5th Cir. 1968); Peter v. Arrien, 325 F.Supp. 1361 (E.D.Pa.1971), aff'd, 463 F.2d 252 (3d Cir. 1972).
 
 
 15
 This court said in Brown & Root, Inc. v. Joyner, 607 F.2d 1087, 1090 (4th Cir. 1979), cert. denied, 446 U.S. 981, 100 S.Ct. 2960, 64 L.Ed.2d 837 (1980), "we are confident that employment held to be traditionally maritime under the former Act has not been stripped of its maritime character by the 1972 amendments."[1]
 
 
 16
 We hold, therefore, that the claimant, working over navigable waters on a bridge designed in part as an aid to navigation, is engaged in maritime employment, and is therefore an employee within the meaning of the Act. Although bridge demolition and construction is not classically maritime work under the "ancient traditions of the sea," it has long been merged with such work by the exigencies of modern coastal land and sea traffic. Essential to improving navigation and possessing many of the same hazards and working conditions as more traditional work on navigable waters, such employment carries with it the fundamental elements of what historically has been regarded as maritime employment.
 
 
 17
 REVERSED.
 
 
 
 [1]
 We did not indicate in Brown & Root, Inc., that Congress intended to include in the section 2(3) definition of maritime workers all workers held by pre-1972 judicial decisions to have been covered by the LHWCA; nor is it now necessary to decide that issue