542 So.2d 742 (1989)
Jesse W. DEAN
v.
STATE of Louisiana, et al.
No. 88-CA-2071.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1989.
Writ Denied June 2, 1989.
*743 John R. Wellman, New Orleans, for plaintiff.
Mark J. Spansel, David B. Magee, Adams and Reese, New Orleans, for appellee, John F. Beasley Const. Co.
Before BARRY, LOBRANO and WILLIAMS, JJ.
WILLIAMS, Judge.
Plaintiff, Jesse W. Dean, appeals partial summary judgment in favor of defendant, John F. Beasley Construction Co. (Beasley), dismissing plaintiff's negligence claim against defendant under Section 5(b) of the Longshore & Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq.[1] Plaintiff alleges that he was injured on July 15, 1983 in the course of his employment as an ironworker employed by Beasley in the construction of the Greater New Orleans Mississippi River Bridge II (GNO II). According to plaintiff, his job at times required him to work on a barge owned by Beasley which was moored near the east bank of the River. Plaintiff attempted to step from the wharf onto the barge when he lost his footing on a loose piling, causing him to fall head first approximately 14 feet into defendant's barge and thereby sustain severe injuries. In his petition, plaintiff basically alleges that Beasley is liable to him in negligence under 905(b) for failing to provide a gangway for ingress and egress to the barge; failing to warn plaintiff of a dangerous condition; failing to inspect and maintain the pilings.[2]
Beasley filed a motion for partial summary judgment on the grounds that plaintiff's claim did not constitute a maritime tort which is necessary to maintain a 905(b) claim. Beasley's motion was granted by the trial court. Plaintiff appealed, assigning as error the trial court's failure to find that plaintiff was covered under 33 U.S.C. § 905(b). We affirm.
In order to maintain his negligence action against Beasley under 33 U.S. C. § 905(b), plaintiff's claim must be properly characterized as one in maritime tort. Drake v. Raymark Industries, Inc., 772 F.2d 1007, 1014 (1st Cir.1985), cert. den., 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986); May v. Transworld Drilling Co., 786 F.2d 1261, 1264 (5th Cir.1986), cert. den., 479 U.S. 854, 107 S.Ct. 190, 93 L.Ed.2d 123. A maritime tort is one which falls within the admiralty jurisdiction. Drake v. Raymark Industries, Inc., 772 F.2d at 1012, citing Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 253, 93 S.Ct. 493, 497, 34 L.Ed.2d 454 (1972) [Court stated: (d)etermination of the question whether a tort is `maritime' and thus within the admiralty jurisdiction of the federal courts ...."]. Thus, the scope of 905(b) is co-extensive with the outer limits of federal maritime and admiralty *744 jurisdiction.[3]Christoff v. Bergeron Industries, Inc., 485 So.2d at 641. See Parker v. South Louisiana Contractors, Inc., 537 F.2d 113 (5th Cir.1976), cert. den. 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977); Holland v. Sea-Land Service, Inc., 655 F.2d 556 (4th Cir.1981), cert. den., 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982).
Furthermore, although state courts have concurrent jurisdiction with federal courts to hear 905(b) actions, the state courts may not enlarge federal substantive rights. Christoff v. Bergeron Industries, Inc., 485 So.2d at 641. Therefore, the requirement that the 905(b) tort be within the admiralty jurisdiction applies in state as well as federal court. Id.
ADMIRALTY TORT JURISDICTION
Historically, federal maritime jurisdiction was determined strictly on the basis of locality, covering only injuries which occurred seaward of the land, on navigable waters. Nacirema Operating Co. v. Johnson, 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969); Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). The federal maritime law did not govern cases in which plaintiff's injury occurred shoreward of the navigable waters, including injury on a pier or wharf. Nacirema Operating Co. v. Johnson, supra; Victory Carriers, Inc. v. Law, supra.
In its 1972 Amendments to the LHWCA, Congress responded by extending the situs upon which a maritime employee could recover workers' compensation benefits from his employer to include "any adjoining pier, wharf, dry dock, terminal, ... or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling or building a vessel." 33 U.S.C. § 903(a). In his brief, appellant suggests that this expanded situs applies to tort actions under 905(b). However, the federal judiciary has determined that, while Congress did extend the situs for purposes of workers' compensation under the Act, Congress expressed no intent to also extend the situs available for maritime tort cases under 905(b). Parker v. South Louisiana Contractors, Inc., 537 F.2d at 116; Holland v. Sea-Land Service, Inc., 655 F.2d at 559; Drake v. Raymark Industries, Inc., 772 F.2d at 1014.
Nonetheless, the Supreme Court rejected the strict-locality test establishing federal maritime jurisdiction in aviation tort cases occurring over water. Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. at 261, 93 S.Ct. at 501. The Executive Jet court held that, not only must the locality requirement be met, but there must also exist a relationship or "nexus" between the wrong and some maritime service or navigation.
Shortly thereafter, the Fifth Circuit held the rationale of Executive Jet applicable to all tort cases, not just aviation torts. Kelly v. Smith, 485 F.2d 520, 524 (5th Cir.1973), cert. den., 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974). The Supreme Court later expanded the rule to apply beyond aviation torts and held that it was applicable to maritime torts as well. Foremost Insurance Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982).
Accordingly, in determining whether plaintiff's claim against Beasley is a maritime tort which can be brought under 905(b), we must determine whether plaintiff's claim meets both the situs and the nexus tests set forth for the parallel analysis of admiralty jurisdiction in Executive Jet.
SITUS
We now turn to an examination of the criteria set forth in Executive Jet as applied to the case at bar. Under the situs criterion, the tort occurs at the locality where the alleged negligence took effect. Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. at 266, 93 S.Ct. at 503. An action for tort is cognizable under traditional *745 federal admiralty jurisdiction if, under the situs test, the tort occurred on navigable water. Holland v. Sea-Land Service, Inc., 655 F.2d at 558.
In the present case, the accident had its inception on a piling located just adjacent to the wharf. In an attempt to board the barge, plaintiff first stepped from the wharf onto the piling. The piling allegedly shifted and caused plaintiff to fall into the barge, at which point he sustained his injury. Thus, the effect of the alleged negligence, the injury, occurred on the barge in navigable waters. Cf. Smith v. Pan Air Corp., 684 F.2d 1102, 1111 (5th Cir.1982) [Court stated: "In products liability cases, admiralty jurisdiction has repeatedly been extended to cases in which death or injury occurred on navigable waters even though the wrongful act occurred on land. (footnote omitted) The place where the negligence or wrongful act occurs is not decisive. The place injury occurs and the function the injured person was performing ... are more significant."]. Therefore, we find that the plaintiff meets the situs prong of the test. Authement v. Conoco, Inc., No. 86-3482 (E.D.La. Nov. 20, 1987). See Drake v. Raymark Industries, Inc., supra.
NEXUS
Next, we consider the nexus criterion of Executive Jet. This test requires that a significant relationship exist between the wrong and traditional maritime activity. Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. at 268, 93 S.Ct. at 504; Foremost Insurance Co. v. Richardson, 457 U.S. at 673, 102 S.Ct. at 2657; Kelly v. Smith, 485 F.2d at 525.
The Fifth Circuit in Kelly delineated four factors to be considered in the nexus analysis: 1) the functions and roles of the parties; 2) the types of vehicles and instrumentalities involved; 3) the causation and the type of injury; and 4) the traditional concepts of the role of admiralty law. Kelly v. Smith, 485 F.2d at 525. See Drake v. Raymark Industries, Inc., 772 F.2d at 1015. The Fifth Circuit later held that, where some of the factors counsel in favor of assuming admiralty jurisdiction and some against, particular emphasis should be placed on the fourth factorthe traditional concepts of the role of admiralty law. Woessner v. Johns-Manville Sales Corp., 757 F.2d 634, 643 (5th Cir.1985).
Moreover, the Fifth Circuit has suggested a more stringent application of the Kelly factors by adding the analysis of "indicia of maritime flavor" found in 1) the impact of the event on maritime shipping and commerce; 2) the desirability of a uniform national rule to apply to such matters; and 3) the need for admiralty "expertise" in the trial and decision of the case. Molett v. Penrod Drilling Co., 826 F.2d 1419, 1426 (5th Cir.1987). In general, courts have begun to recognize that torts lacking "a close connection to the shipping industry should be non-maritime, as the best reason for having federal admiralty jurisdiction is that there is a federal interest in having uniformity in commercial shipping matters." 1 S.F. Friedell, Benedict on Admiralty § 171, at 11-29 (7th ed. 1988). In our analysis of the present case, we incorporate the "indicia" of Molett into the four Kelly factors. See Molett v. Penrod Drilling Co., 826 F.2d at 1426.
a. Function and Roles of Parties
We first consider the functions and roles of the parties. Plaintiff was employed by Beasley as an ironworker in the construction of the GNO II. The record shows that plaintiff's job required that he work wherever he was needed in building the bridge, particularly on the barges and on the super structure of the bridge itself.
Appellant argues that he was engaged in maritime employment since he was required to perform his duties upon navigable waters, citing Director, Office of Workers' Compensation Programs, United States Department of Labor v. Perini North River Associates, 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983). Appellant further argues that the fact that he was working on a bridge designed to aid not only land traffic but also navigation and commerce makes him a covered employee entitled to a 905(b) action, citing LeMelle v. *746 B.F. Diamond Construction Co., 674 F.2d 296 (4th Cir.1982), cert. den. 459 U.S. 1177, 103 S.Ct. 830, 74 L.Ed.2d 1024 (1983). In both Director and LeMelle, the claimant was found to be engaged in maritime employment and therefore, was a covered "employee" under the LHWCA, 33 U.S.C. § 902(3), entitled to recover compensation benefits.
Appellant's reliance on Director and LeMelle is misplaced. Federal standards which are used to determine the functions and roles of the parties in the analysis of maritime nexus for purposes of establishing federal admiralty jurisdiction or a 905(b) action have proved more stringent than those used to determine whether a claimant is engaged in maritime employment and thus a covered "employee" under 902(3) who is entitled to compensation benefits under the LHWCA. But see Marler v. International Grain Corp. 523 F.Supp. 518, 520 (M.D.La.1981). In examining the functions and roles of the parties for purposes of determining sufficiency of the nexus test, the issue is not solely whether plaintiff worked on navigable waters or even the importance of plaintiff's occupation to maritime commerce. Harville v. Johns-Manville Products Corp., 731 F.2d at 784. Rather, the proper question is whether the actual tasks the worker performs bears any inherent relationship to maritime activity. Id. at 784; Woessner v. Johns-Manville Sales Corp., 757 F.2d at 644.
In the present case, plaintiff's occupation did require that he spend much of his time on navigable waters and was important to maritime commerce insofar as the GNO II aids in maritime commerce. However, we cannot say that plaintiff's job was unique to maritime service. Rather, plaintiff's tasks were connected to maritime affairs merely because they were performed aboard the barges or in navigable waters.
The plaintiff's role and function, although related to maritime activity, was not so inherently maritime as to militate toward finding the nexus required to maintain a 905(b) action. Therefore, the first Kelly factor weighs against finding a significant maritime relationship.
b. Types of Vehicles and Instrumentalities
Next, we consider the types of vehicles and instrumentalities involved. The only vehicle involved was the barge into which plaintiff fell when he lost his footing. We consider plaintiff's fall into the barge fortuitous since plaintiff might just have likely have fallen back onto the wharf. Thus, the involvement of the barge is somewhat attenuated and, in itself, does not create a significant nexus to maritime activity.
The instrumentality involved was the piling which shifted under plaintiff's weight. It appears from the record that the piling was part of the wharf, and for this reason we consider it to be landward of the navigable waters.
Because we consider plaintiff's fall onto the barge purely fortuitous, we hold that the fact that plaintiff's fall had its inception on land should carry more weight than the fact that his injury culminated when he landed in the barge. Authement v. Conoco, Inc., supra. Therefore, the second Kelly factor counsels against finding a significant nexus.
c. Causation and Type of Injury
Third, we consider the causation and type of injury. Plaintiff alleges that his injuries were caused in part by Beasley's failure to provide a safe walkway for access to the barges and failure to inspect and maintain the pilings. The shifting of the piling actually precipitated plaintiff's fall.
Although the injury occurred in navigable waters, we do not consider that the causative factors in the instant case are distinguishable from those arising in land-based slip and fall claims. For example, it is not uncommon in road or land excavation that a safe walkway might be needed at the work site. Likewise, we cannot hold that the piling which shifted is of such uniquely maritime character to sustain the relationship with maritime navigation or commerce. Moreover, the impact of either *747 the causative factors or plaintiff's injury upon the maritime industry is minimal and does not weigh in favor of finding maritime nexus.
In addition, plaintiff's injuries are indistinguishable from injuries sustained in land-based slip and fall claims, despite that the injuries culminated on the barge. See Authement v. Conoco, Inc., supra; Woessner v. Johns-Manville Sales Corp., 757 F.2d at 647 ["Our decisions giving a maritime character to land-based tort claims ... were of uniquely maritime character such as ship collision or sinking while actually underway on navigable waters."].
For these reasons, we believe the third Kelly factor operates against finding a substantial nexus to maritime activity.
d. Traditional Concepts of Role of Admiralty Law
Fourth, considering the traditional concepts of the role of admiralty law, an examination as to whether the exercise of federal maritime law over plaintiff's claim against Beasley would advance the policies of federal admiralty law is necessary. Of the four Kelly factors, this is clearly the most important. Harville v. Johns-Manville Products Corp., 731 F.2d at 785.
Federal maritime law has developed over a period of centuries and is "designed and molded to handle problems of vessels relegated to ply the waterways of the world." Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. at 269, 93 S.Ct. at 505. The core purpose of maritime law is the protection of vessels on navigable waters. Harville v. Johns-Manville Products Corp., 731 F.2d at 784. Application of federal maritime law is not justified where the specific federal interests in admiralty are not implicated. Id. at 785.
Federal admiralty law has traditionally been concerned with matters which include navigational rules, collisions, seaworthiness, maintenance and cure, general average, cargo claims and salvage claims. Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. at 270, 93 S.Ct. at 505; Woessner v. Johns-Manville Sales Corp., 757 F.2d at 648. The traditional concerns of admiralty law do not call for a uniform resolution of plaintiff's claims. We cannot say that the unsturdy piling or the alleged failure of Beasley to provide a safe walkway between the wharf and the barge in a bridge construction operation in any way affects maritime commerce or is a uniquely maritime concern that requires the application of federal maritime law. Moreover, it is for these same reasons that we see no need for admiralty "expertise" in the trial and decision of this case.
Thus, the fourth Kelly factor militates against finding a nexus to traditional maritime activity.
We conclude, therefore, that there is insufficient nexus between the wrong in this case and maritime activity for plaintiff to maintain a maritime tort action against Beasley under 905(b).
For the foregoing reasons, we hold that the trial court was correct in sustaining Beasley's motion for partial summary judgment and we affirm the trial court's dismissal of plaintiff's 905(b) claim against Beasley.
AFFIRMED.
NOTES
[1] The 1984 Amendment to 33 U.S.C. § 901 substituted "Longshore" for "Longshoremen's."
[2] Prior to the 1984 Amendment to Section 905(b), effective September 28, 1984, an employee could bring an action against a vessel on which he was injured for its negligence as a third party even though the owner of that vessel was also the employer of the employee. Christoff v. Bergeron Industries, Inc., 485 So.2d 639, 640 n. 1 (La.App. 4th Cir.1986), citing Smith v. M/V Captain Fred, 546 F.2d 119 (5th Cir.1977).
[3] Federal jurisprudence has held that, in fact, the test for determining whether admiralty law applies to a claim parallels the analysis for determining whether a claim falls within the maritime jurisdiction of the federal courts. May v. Transworld Drilling Co., 786 F.2d at 1265; Drake v. Raymark Industries, Inc., 772 F.2d at 1014. See also Austin v. Unarco Industries, Inc., 705 F.2d 1, 6 n. 1 (1st Cir.1983), cert. den. 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed 2d 1454 (1983); Harville v. Johns-Manville Products Corp., 731 F.2d 775, 779 (11th Cir.1984).