**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1695

KENNETH MUHAMMAD,

Plaintiff - Appellant,

v.

NORFOLK SOUTHERN RAILWAY CO., f/k/a Norfolk & Western Railway Co.,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Raymond A. Jackson, District Judge. (2:18-cv-00020-RAJ-LRL)

Argued: January 29, 2019                    Decided: June 4, 2019

Before NIEMEYER, KEENAN, and QUATTLEBAUM, Circuit Judges.

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Keenan and Judge Quattlebaum joined.

**ARGUED:** Joshua T. Gillelan, II, LONGSHORE CLAIMANTS' NATIONAL LAW CENTER, Washington, D.C., for Appellant. David C. Bowen, WILLCOX & SAVAGE, P.C., Norfolk, Virginia, for Appellee. **ON BRIEF:** Richard N. Shapiro, SHAPIRO & APPLETON P.C., Virginia Beach, Virginia, for Appellant. Brianna L. Barnes, WILLCOX & SAVAGE, P.C., Norfolk, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

Kenneth Muhammad, a railroad employee, was injured while replacing railroad crossties on a bridge spanning navigable waters. When Muhammad filed a negligence claim against his employer under the Federal Employers' Liability Act ("FELA"), the district court granted the employer's motion to dismiss for lack of subject-matter jurisdiction. The court concluded that Muhammad was injured "upon navigable waters" and was engaged in "maritime employment" and therefore that the Longshore and Harbor Workers' Compensation Act ("LHWCA") provided the exclusive remedy for his claim. Because we conclude, however, that Muhammad's injury did not occur "upon navigable waters," as required by the LHWCA, we reverse and remand for further proceedings.

I

In May 2016, while Muhammad was employed by Norfolk Southern Railway Company as a carpenter in its "bridge and building" maintenance department, he performed maintenance work replacing railroad crossties on Norfolk Southern's South Branch Lift Bridge in Virginia. The Bridge crosses the Elizabeth River, which has been declared navigable by the U.S. Coast Guard, and the center span of the Bridge lifts upward to allow vessels to navigate under it. The train traffic crossing the Bridge primarily serves businesses to the west of the Elizabeth River, often traveling to the Portlock Railyard, which is landlocked and approximately a mile east of the River.

The work crew with whom Muhammad was working traveled to the South Branch Lift Bridge via truck, and their work never required the use of boats. While Muhammad

2

was working on the Bridge on May 19, a portion of the walkway on which he was walking collapsed. He was able to avoid falling into the River but sustained serious injuries that have prevented him from returning to work.

Muhammad then commenced this action against Norfolk Southern under the FELA, 45 U.S.C. § 51 *et seq*., claiming that Norfolk Southern's negligence caused his injuries. Norfolk Southern filed a motion to dismiss Muhammad's action, claiming that "the court lack[ed] subject matter jurisdiction over [the] action and the LHWCA ha[d] exclusive jurisdiction." Granting the motion would benefit Norfolk Southern by limiting its damages exposure to the scheduled and specified amounts provided by the LHWCA, which is a workers' compensation statute, as distinct from the unscheduled damages to which it was exposed by a negligence claim under the FELA.

The district court granted Norfolk Southern's motion and dismissed Muhammad's complaint. In doing so, the court held that "the LHWCA provides the exclusive remedy for [Muhammad's] claim" and that it therefore "[did] not have subject matter jurisdiction to proceed" on Muhammad's FELA action. In holding that the LHWCA applied exclusively to cover Muhammad's injuries, the court concluded that the circumstances of the incident satisfied both the "situs" requirement of the LHWCA that Muhammad's injury be "upon navigable waters" and the "status" requirement that he be engaged in "maritime employment." Relying on *LeMelle v. B. F. Diamond Construction Co.*, 674 F.2d 296 (4th Cir. 1982), the court concluded that the situs requirement includes work both "upon" and "over" navigable waters, reasoning that a bridge *over* navigable waters that allows ships to pass underneath it facilitates and aids the navigation of maritime

3

traffic. And relying on *Chesapeake & Ohio Railway Co. v. Schwalb*, 493 U.S. 40 (1989), the court concluded that Muhammad's work "constitute[d] maritime employment because repairing and rebuilding the [Bridge] [was] an essential and integral element of the loading or unloading process of the maritime traffic flowing under the Bridge." The court reasoned that the "Bridge lifts to permit passing vessels to navigate the Elizabeth River" and that Muhammad's "employment [was] essential when ensuring that the Bridge remain[ed] in safe, operating condition for maritime and commercial rail traffic to reach nearby loading facilities that rely on the South Branch of the Elizabeth River."

From the district court's order of dismissal dated June 13, 2018, Muhammad filed this appeal.

II

While Muhammad brought this action under the FELA based on allegations of Norfolk Southern's negligence, the district court concluded that Muhammad's action could only be brought under the LHWCA. It thus held that it did not have subject-matter jurisdiction and dismissed the action under Federal Rule of Civil Procedure 12(b)(1). This lack-of-jurisdiction conclusion was misplaced, however, as Muhammad's claim under the FELA indisputably invoked the district court's subject-matter jurisdiction under 45 U.S.C. § 56 (conferring jurisdiction on district courts for FELA claims) and 28 U.S.C. § 1331 (conferring jurisdiction on district courts for claims arising under the laws of the United States).

4

To be sure, if Muhammad's injury was covered by the LHWCA, then that Act, as a workers' compensation law, would provide him with the exclusive remedy for his work-related injury. *See* 33 U.S.C. § 905(a) (providing that the employer's liability for covered injuries "shall be exclusive and in place of all other liability of such employer to the employee"); *In re CSX Transp., Inc.*, 151 F.3d 164, 171 (4th Cir. 1998) (holding that "LHWCA coverage is exclusive and preempts [the plaintiff] from pursuing an FELA claim"). The preemptive effect of the LHWCA would thus be an affirmative defense that Norfolk Southern could raise in response to Muhammad's complaint, but it would not deny the district court subject-matter jurisdiction over the complaint. *See Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) (noting that "the applicability of the LHWCA's exclusivity provision presents . . . an issue of preemption, not jurisdiction" and that "Federal preemption is an affirmative defense that a defendant must plead and prove"); *cf.* 9 Lex K. Larson & Thomas A. Robinson, *Larson's Workers' Compensation Law* § 100.01 (2018) ("In a tort action by an employee to recover damages for a work-related injury, the employer has the burden of proving the affirmative defense that the plaintiff was an employee entitled only to workers' compensation").

Of course, had Muhammad filed his claim in the district court *under the LHWCA*, the district court would indeed have been required to dismiss it for lack of subject-matter jurisdiction. "An LHWCA claim must be filed with the Department of Labor where it is assigned to an administrative law judge whose decision is reviewed by the Benefits Review Board. Review by the courts is authorized through a petition for review, which may be filed only in the courts of appeals, not in the district court." *In re CSX Transp.*,

5

151 F.3d at 171 (citing 33 U.S.C. §§ 910(a), 921(b), 921(c)); *see also Sidwell v. Express Container Servs., Inc.*, 71 F.3d 1134, 1136 (4th Cir. 1995) ("Congress legislated a 'status' requirement and a 'situs' requirement, both of which must be satisfied in order for the Board to have jurisdiction to award benefits").  But Muhammad did not assert an LHWCA claim here.

Accordingly, while the district court concluded erroneously that it lacked subject-matter jurisdiction, we will take the court's dismissal order to have concluded that Muhammad's FELA claim was barred because his injury was covered exclusively by the LHWCA, which preempted his FELA claim.

## III

We now turn to the question of whether Norfolk Southern properly demonstrated to the district court that the LHWCA covered Muhammad's workplace injury.

The LHWCA makes employers liable for the payment of specified compensation to employees for certain injuries "arising out of and in the course of employment." 33 U.S.C. §§ 904, 902(2).  For the LHWCA to apply, the employee must be a "person engaged in maritime employment," which is defined to include "any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker." *Id*. § 902(3).  Moreover, to be covered by the LHWCA, the employee's injury must "occur[] upon the navigable waters of the United States," which is defined to include "any adjoining pier, wharf, dry dock, terminal,

building way, marine railway,[*] or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." *Id.* § 903(a). Both the *status* of the employee ("engaged in maritime employment") and the *situs* of the injury ("upon the navigable waters of the United States") must be satisfied in order for the Act to apply.

The method for construing and applying the status and situs requirements is informed by Congress's 1972 amendments to the LHWCA. Prior to 1972, "the [LHWCA] applied only to injuries *occurring on navigable waters.* Longshoremen loading or unloading a ship were covered on the ship and the gangplank *but not shoreward*, even though they were performing the same functions whether on or off the ship." *Chesapeake & Ohio Ry. v. Schwalb*, 493 U.S. 40, 46 (1989) (emphasis added). In 1972, Congress obviated this anomaly by amending the Act, inserting the parenthetical language in § 903(a) that expands the situs definition of "upon navigable waters" to include "any adjoining pier, wharf, dry dock, terminal, building way, marine railway or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel," 33 U.S.C. § 903(a), thereby "extend[ing] coverage to the area adjacent to the ship that is normally used for loading and unloading." *Schwalb*, 493 U.S. at 46. Recognizing that this "expansion of the definition of navigable waters to include rather large shoreside areas necessitated an affirmative description of the particular employees working in those areas who would be covered," Congress also

---

[*] A marine railway is a patent slip or slipway for taking vessels in and out of the water.

7

added the "maritime employment" requirement as part of the 1972 amendments in order to limit its expansion of the Act shoreside. *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 423 (1985). Thus, "[w]ith the 1972 amendments, the test for coverage . . . changed from a simple situs test to a test incorporating situs and status requirements." *Jonathan Corp. v. Brickhouse*, 142 F.3d 217, 220 (4th Cir. 1998).

In adding the status requirement, however, Congress did not narrow the overall coverage of the LHWCA, but instead only limited its shoreside expansion of the Act. *Dir., OWCP v. Perini N. River Assocs.*, 459 U.S. 297, 315 (1983). Thus, if an employee's injury would have been covered by the LHWCA prior to the 1972 amendments, the injury would still be covered by the Act following the 1972 amendments. *Id.* at 315, 325. Accordingly, when it is shown that an employee was injured "upon the actual navigable waters in the course of their employment" — *i.e.*, that the employee was injured working "on" navigable water and thus "traditionally covered" under the pre-1972 Act — the inquiry ends. *See id.* at 323, 325; *see also Zapata Haynie Corp. v. Barnard*, 933 F.2d 256, 259 (4th Cir. 1991) ("[T]he first question is whether Barnard would have fallen within the pre-1972 coverage of the Act. If so, the inquiry ends. If not, Barnard must satisfy both the status and situs requirements in order to be covered").

In this case, we conclude that the situs of Muhammad's injury on a railroad bridge over navigable waters would not satisfy the pre-1972 requirement that his injury occur "upon navigable waters." *See Schwalb*, 493 U.S. at 46 (noting that the pre-1972 situs test drew the line between land and water at the ship's gangplank); *Nacirema Operating Co.*

8

*v. Johnson*, 396 U.S. 212, 215 (1969) ("[A] statute that covers injuries 'upon the navigable waters' would not cover injuries on a pier even though the pier, *like a bridge*, extends over navigable waters") (emphasis added)); *cf. Herb's Welding*, 470 U.S. at 420 ("Because until 1972 the LHWCA itself extended coverage only to accidents occurring on navigable waters, and because stationary rigs were considered to be islands, oil rig workers . . . were left to recover under state schemes" (citations omitted)).

Norfolk Southern cannot seriously contest the proposition that Muhammad's injury did not occur "upon navigable waters," as that term was consistently applied before 1972. It has pointed to no pre-1972 case where a court held that an employee working on a bridge *over* navigable waters was working *upon* navigable waters. The *Nacirema* Court made this distinction clear, observing that working on a pier, "like a bridge," would not be covered by a statute requiring that the employee work "upon navigable waters." 396 U.S. at 215. To be sure, an employee working from a barge on navigable waters while constructing or maintaining a bridge would, under the pre-1972 standard, be on navigable waters, as that employee would then be physically working from a vessel on navigable waters. *See, e.g.*, *Davis v. Dep't of Labor & Indus.*, 317 U.S. 249, 251 (1942). But Muhammad, who was working on a bridge itself and not from a barge or other vessel, would not have been covered by the LHWCA before 1972. We must therefore inquire as to whether the 1972 amendments expanded LHWCA coverage to the situs where Muhammad was injured.

The 1972 amendments to the LHWCA extended the situs of a covered injury to include "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or

9

other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a). Because Muhammad's injury did not occur on a "pier, wharf, dry dock, terminal, building way [or] marine railway," our inquiry must focus on whether his injury occurred in an "other adjoining area." And in order for an "other adjoining area" to constitute a covered situs, "it must be a discrete shoreside structure or facility" that is "'customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel,' as the statute provides." *Sidwell v. Express Container Servs., Inc.*, 71 F.3d 1134, 1139–40 (4th Cir. 1995). Put differently:

> In extending the line of coverage landward, Congress . . . defined navigable waters to include certain land areas "adjoining" the navigable waters. The landward extension is a seamless annexation of land to navigable waters for purposes of LHWCA coverage. But the annexation does not include all adjacent land. *The statute extends "navigable waters" only to land relating to work on those waters*, specifically enumerating adjoining piers, wharfs, dry docks, terminals, building ways, and marine railways. These are facilities customarily used by longshoremen in loading and unloading ships and in repairing or building them. The link between the navigable waters and the land side facilities is thus established under the statute by (1) the contiguity of the land side facility and navigable water, and (2) the affinity of the land side facility to longshoremen's work on ships. . . . *The "other area" annexed to navigable waters by the Act must again be "adjoining" the water and must again be linked to the traditional longshoremen's work on the water.* The "other area" must be for the loading or unloading of cargo onto ships in navigable waters or for the "repairing, dismantling, or building" of those ships.

*Jonathan Corp.*, 142 F.3d at 221 (emphasis added) (citations omitted); *see also Schwalb*, 493 U.S. at 46 (noting that the 1972 amendments "extended coverage to the area adjacent to the ship that is normally used for loading and unloading").

The undisputed facts in this case show that Muhammad was not injured on a facility contiguous to navigable waters that was customarily used for the loading,

unloading, repairing, dismantling, or building of a vessel — *i.e.*, a facility linked to traditional longshoremen's work on the water. Rather, the situs of Muhammad's injury was a railroad that was quite distinct from such a facility, and the location on the Bridge where Muhammad was injured was accessible only by land and was not contiguous to water.

While the Bridge's center span did lift to allow vessels to pass underneath it, a land-based bridge's simple accommodation of ships is a far cry from a shoreside facility serving as "an integral or essential part of loading or unloading a vessel." *Schwalb*, 493 U.S. at 45. Norfolk Southern argues otherwise, asserting that a bridge allowing commercial navigation to travel underneath it provides a sufficient connection to "navigable waters" to support LHWCA coverage for injuries on that bridge. But the nexus to loading and unloading must not be so remote as to include any situs that is simply somehow *related* to navigable waters. Indeed, Norfolk Southern's argument would extend LHWCA coverage to injuries occurring on *every bridge* that allowed ships to pass under it. Congress clearly did not intend so broad a coverage. As the Supreme Court has noted, in enacting the 1972 amendments, Congress did not "seek to cover all those who breathe salt air. Its purpose was to cover those workers on the situs who are involved in the essential elements of loading and unloading." *Herb's Welding*, 470 U.S. at 423.

In reaching the contrary conclusion that the South Branch Lift Bridge was indeed a situs covered by the LHWCA, the district court relied principally on two cases, *LeMelle v. B. F. Diamond Construction Co.*, 674 F.2d 296 (4th Cir. 1982), and *Zapata Haynie*

11

*Corp. v. Barnard*, 933 F.2d 256 (4th Cir. 1991). Neither case, however, supports the district court's conclusion.

In *LeMelle*, we held that an employee injured while he was working to demolish and replace a bridge that crossed over the James River, a navigable water in Virginia, was covered by the LHWCA. 674 F.2d at 297–98. The work there, however, was performed with the extensive use of boats, and the parties "agree[d] that the situs requirement for LeMelle's claim [was] satisfied." *Id*. at 297. Accordingly, in *LeMelle*, we only addressed the status requirement. Nonetheless, during the course of our discussion, we stated — what Norfolk Southern and the district court relied on heavily — that "bridge construction and demolition workers employed over navigable water were covered prior to the 1972 amendments" and cited three cases to support that statement. *See id.* at 298 (citing *Davis*, 317 U.S. 249; *Hardaway Contracting Co. v. O'Keeffe*, 414 F.2d 657 (5th Cir. 1968); and *Peter v. Arrien*, 325 F. Supp. 1361 (E.D. Pa. 1971)). In *Davis* and *Hardaway*, as was the case in *LeMelle* itself, the work involved the extensive use of barges, on which the employees' injuries occurred. *See Davis*, 317 U.S. at 251 (noting that "a tug, derrick barge, and a barge" were used in the project and that the employee fell from the barge and drowned); *Hardaway*, 414 F.2d at 660–61 (noting that the employee died while "transferring an oil drum from a small launch to a fixed barge"). And in *Peter*, instead of using barges, the contractor constructed a temporary causeway on the water "solely to provide access toward the middle of the river and it was to be dismantled as soon as the demolition was completed." 325 F. Supp. at 1364. Thus, our statement in *LeMelle*, which the district court took out of context, referred to bridge work performed

12

upon navigable waters insofar as the work was performed from barges, launches, and the like that were *actually on* navigable waters.

And in *Zapata*, the employee was working as an airplane pilot for a commercial fishing company, spotting fish from the air to aid commercial fishing boats. 933 F.2d at 257–58. Because we concluded that "fish spotting was traditionally an activity inherent to commercial fishing" — citing expert testimony that, "traditionally, crewmen would climb to the crow's nests of fishing vessels to spot fish" — we concluded that the employee performing that traditional fishing function was covered by the LHWCA. *See id*. at 260. We reasoned that the employee's "duties required him to work over navigable waters at all times except for taking off and landing" and that he "was regularly engaged in the course of his duties over navigable waters and not merely *fortuitously* over water when his injury occurred." *Id*. at 259–60 (emphasis added).

Neither of these cases support the proposition that working on a land-accessed railroad bridge over navigable waters to replace railroad crossties qualifies as working on a situs covered by the LHWCA. Rather, the law is clear that, for a land-based situs to be covered under the Act, it must be a shoreside facility that is "an integral or essential part of loading or unloading a vessel" — a facility linked to traditional longshoremen's work on the water. *Schwalb*, 493 U.S. at 45; *Jonathan Corp.*, 142 F.3d at 222. The South Branch Lift Bridge is not such a facility.

Because Muhammad was not injured on a situs covered by the LHWCA, we need not reach the question of whether he was engaged in maritime employment. And since his injury was not covered by the LHWCA, the district court erred in dismissing his

13

FELA claim. The judgment of the district court is therefore reversed and the case remanded for further proceedings.

REVERSED AND REMANDED