_JjDUFRESNE, Chief Judge.
This is an appeal by Terminal Stevedores, Inc. (TSI), defendant-appellant, from a judgment finding it liable to its employee Dale Estay, plaintiff-appellee, under 33 U.S.C. 905(b) of the Longshoremen’s and Harbor Workers’ Compensation Act. For the following reasons, we affirm that judgment.
The basic facts of the accident are not disputed. Estay was employed by TSI for work repairing a dock fender system on the Mississippi River. The work was conducted from a non-self-propelled crane barge, the Timber Wolf. The routine of the work was that new fender timbers were loaded on the barge and it was moved by tug to the work site and tied to the dock. The old timbers were unbolted and removed from the fender to the deck of the barge by the crane, and the new ones were similarly put in place and re-bolted.
During this process the workers were from time to time required to climb from the barge onto the fender, which they accomplished by using |2the spaced fender timbers in effect as ladder rungs. On the day in question here, Estay was descending from the fender onto the barge. He put his foot down on one of the old timbers on the deck, but before getting a good footing he released his hold on the fender timber. It appears that at that moment waves from a passing boat caused the barge to fall in the water some six to twelve inches and Estay lost his balance and fell. He suffered spinal disc injuries which eventually required surgery to repair.
Estay brought suit in state court against TSI under the Jones Act, alleging that he was a seaman on the Timber Wolf. He also sought compensation benefits under the Longshoremen’s and Harbor Workers’ Compensation Act (LHWCA), 33 U.S.C. Sec. 901 et seq., which were eventually awarded to him. During the course of that LHWCA administrative proceeding, TSI asserted that the barge Timber Wolf was a vessel in navigation, that Estay was a Jones Act seaman attached to that vessel as alleged in his state court suit, and therefore that the LHWCA did not apply. *793 Estay argued that the barge was not a vessel. The Administrative Law Judge determined that the barge was not a vessel for Jones Act purposes and therefore that Estay was not a seaman, but was rather a worker entitled to benefits under LHWCA.
Estay subsequently amended his state court petition to assert an action against TSI as owner of the Timber Wolf under Sec. 905(b) of the LHWCA. He also named as a defendant Archer Daniels Midland (ADM), the owner of the dock and fender system. The matter was tried without a jury and resulted in a general damage award to Estay and against TSI of $180,000, reduced by 50% for plaintiffs comparative fault, plus lost wages, medical expenses and interest. TSI was also allowed to off-set payments 13previously made to Estay under the LHWCA award. ADM was dismissed from the action.
In his reasons for judgment the trial judge found that the Timber Wolf was a vessel and that TSI, as vessel owner, was negligent in not providing a “hook-ladder” for ingress and egress from the barge to the fender structure. He further found that Estay was also negligent in releasing his handhold on the fender before he had a firm foothold on the deck of the barge. TSI now appeals the determination of “vessel” status and the finding of negligence due to failure to supply a ladder. Estay cross-appeals contesting the apportionment of comparative fault on his part, as well as certain elements of the monetary award which he contends are too low.
The statutory basis for this suit is Sec. 905(b) of the LHWCA. That section provides that while a harbor worker’s exclusive remedy against his employer for injuries suffered on the job aboard a vessel is for compensation benefits, he may also sue the owner of the vessel on which he was injured in tort if the injury was caused by the negligence of that owner. Where the employer has the dual capacity as vessel owner and employer, the employee may also sue his employer for negligent acts committed by it as owner of the vessel, but not for negligent acts committed by it as employer. To recover under this section the plaintiff must first show that he is a covered longshoreman or harbor worker, and not the master or member of the crew of a vessel, and also that the apparatus upon which he was injured is in fact a “vessel” as contemplated in the Act.
The trial judge found that Estay was a covered worker and that the Timber Wolf was a vessel. TSI admits to the first finding but disputes the second. In Orgeron v. Avondale Shipyards, Inc., 561 So.2d 38 (La.1990), cert. denied, 498 U.S. 818, 111 S.Ct. 62, 112 L.Ed.2d 36 (1990), a case involving barges much like the one at issue here, the court discussed at length the question of what constitutes a vessel for LHWCA purposes. The court stated that:
Under general maritime law, a vessel is “every description of watercraft or other artificial contrivance used or capable of being used as a means of transportation on water.” [citing 1 U.S.C. Sec. 3] This is the capability test for vessel status. (At 41)
The court went on to find that the floating work platforms at issue in the case were vessels because they were capable of transportation on water and were in fact being used to transport materials.
In the present case, the trial judge found as fact that the barge was used not only as a work platform, but also to transport tools and equipment, the crane, and old timbers from and new timbers to the fender system. He concluded that “the Timber Wolf was not only capable of transportation on navigable waters, it was in fact used to transport timbers and *794 equipment from place to place on the Mississippi River.” Based on these findings, the barge clearly met the test for “vessel” status set forth in Orgeron, supra, and we therefore affirm that determination.
TSI argues alternatively that the determination that the barge was not a vessel previously made in the administrative proceedings should have been given res judicata effect to preclude re-litigation of that issue in the trial court. Under La. R.S. 13:4231, res judicata precludes re-litigation of issues previously litigated by the parties if determination of that issue was essential to that judgment. In Orger-on, supra, the court distinguished between the definition of a “vessel” for Jones Act purposes and LHWCA purposes. In the administrative hearing the only determination made was [sthat the Timber Wolf was not a vessel for Jones Act purposes. The trial judge in the state action made the different determination that the barge was a vessel for Sec. 905(b) purposes. Further, the issue actually to be determined in the administrative hearing was whether Estay was a member of the crew of a vessel. If he were a crew member, then he would have been a Jones Act seaman and thus excluded from coverage under the LHWCA. Although that determination was predicated on the finding of non-vessel status, it could as well have been determined by the fact that Estay was not a member of the crew engaged in navigation. Thus, the finding as to vessel status was not essential to the finding that Estay was not a Jones Act seaman.
We also note that the policy underlying application of res judicata is to have the parties litigate all of the controversies arising out of the same transaction or occurrence at the same time, thus saving litigants from the potential injustice of having to re-litigate the same matters repeatedly with potentially contradictory results. However, “[ijnherent in the concept of res judicata is the principle that a party had the opportunity to raise the claim in the first adjudication,” Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 95-0654 (La.1/16/96), 666 So.2d 624. In the present case Estay could not have raised his 905(b) claim in the administrative proceeding because that forum lacked jurisdiction to entertain such a claim. Moreover, it cannot be said that TSI has been treated unjustly because the LHWCA specifically provides that if recovery is had under Sec. 905(b), then any compensation paid under Sec. 905(a) is reimbursed from that recovery. For the above reasons we conclude that the exception of res judicata was properly rejected.
| sTSI’s last three assignments of error concern testimony by plaintiffs safety expert, Frank Buck, on the question of its negligence in not providing a ladder for ingress and egress to the barge. In the first it asserts that the trial court erred in admitting Buck as an expert on barge safety. It admits that Buck had 36 years of experience operating tugs, crew boats and supply boats and that he has been admitted as an expert in other courts on safety issues. It argues, however, that Buck had no training or experience in the design and repair of fender systems, and therefore was not qualified to address issues relating to such structures, and that it was error to allow him to testify on these questions.
The admission of experts is within the sound discretion of the trial judge, and such determinations will not be disturbed on appeal absent an abuse of that discretion, Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.1/29/96), 666 So.2d 1073. In the present case the objection to Buck is that his expertise does not include fender systems. However, his expertise as to *795 safe ingress and egress from barges is not questioned. The trial judge apparently concluded that the pertinent inquiry was the safety of getting onto and off of the barge from the fender and that that question was well within Buck’s competence to testify. We find no abuse of discretion in this determination.
TSI next argues that the trial judge fell into manifest error in crediting Buck’s opinion that a hook-ladder should have been provided, especially in light of the defense experts’ testimony that such an apparatus would have created even more safety problems than it solved. This situation arises in almost all cases in which opposing experts appear. However, in Rosell v. ESCO, 549 So.2d 840 (La.1989) the court stated that “[w]here two |7permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly wrong.” (At 845) Here, the trial judge credited Buck’s opinion testimony rather than that of the defense experts, and that decision cannot be manifestly erroneous.
TSI’s final argument is that Es-tajes injury would not have been prevented even had a hook ladder been used, and further that the apportionment to it of 50% of the fault for the accident was manifestly erroneous. The basis of this assertion is Buck’s admission that if a hook-ladder had been in place and Estay had released his grip on it before obtaining a secure footing he would have suffered the same injury. Estay, in his cross-appeal, asserts that apportioning 50% of the fault to him was also manifest error.
In his reasons for judgment the trial judge addressed these issues as follows:
I find that a hook-ladder, which did not drop below the level of the vessel, would in fact provide a safer means of ingress and egress to the vessel. Such a ladder would provide the worker with a secure place to grasp the outside of the fender system rather than having to grasp the inside of the timbers and release his grasp from that position. I find that having to grasp the inside of the timber on the fender system would make it more difficult for the worker to secure his footing on the vessel before releasing his grasp on the fender system. I find that TSI’s failure to provide such a hook-ladder system was a breach of its duty to provide a safe means of ingress and egress to the vessel and was a contributing cause of plaintiffs accident.
I also find, however, that plaintiffs own negligence was a contributing cause of his accident. Regardless of the type of equipment being used to board the vessel, it is still incumbent upon the worker to ensure that he has a secure footing on the vessel before releasing his grip of the fender system. Despite the fact that the hook-ladder would have made this procedure safer, it was not impossible to obtain secure footing on the vessel without the hook-ladder; in fact plaintiff and his co-workers have done so numerous times. In this case, plaintiff attempted to step onto a cut timber on the deck and released his grip on the fender system before his footing was secure |son the deck of the vessel. I find that this negligence on his part contributed to his accident. I find the appropriate apportionment of fault is 50% to TSI and 50% to plaintiff.
The trier of fact thus took into account plaintiffs early release of his grip and apportioned half of the fault to him for doing so. He also found, however, that even were the same thing possible with a hook-ladder, it would have been less likely to occur because the configuration of the fender timbers made gripping them and finding a secure footing while doing so more difficult than these maneuvers would *796 have been had a ladder been provided. We find no manifest error in these findings, based as they are on a reasonable view of the evidence and reasonable credibility determinations, and we therefore must affirm them.
The final issue concerns the finding by the trial judge that Estay suffered no future loss of income. In this regard both plaintiff and defendant presented expert testimony as to plaintiffs loss of future income. Dr. Kenneth Boudreaux, the defense expert, concluded that Estay was earning about $9,000 per year at the time of the accident. Because the vocational expert testified that Estay could earn $11,000 per year doing available jobs, Bou-dreaux concluded that there was no future wage loss.
Plaintiff contends that Boudreaux erred in fixing his annual earnings at $9,000 per year, and instead contends that his earnings should have been calculated on his per hour salary of $9.50 per hour at 50 hours per week, yielding about $25,000 per year. This was the approximate figure used by his expert, Harold Asher, CPA. However, Estay’s social security earnings record for the nine years preceding the accident showed that his highest yearly wage was less than $10,000, that he had no earnings for three of those years, and that the average for those years was $3,419. 13Other evidence showed that in 1994, the year after the accident, he earned $17,700, and in 1995, $15,300.
Again, the finding by the trial judge that plaintiff had suffered no loss of future earnings was a reasonable one based as it was on the evidence of his earnings record and expert testimony. Although there was testimony by plaintiffs expert which supported a different finding, the trier of fact’s decision to credit one over the other cannot be manifestly wrong, Rosell v. ESCO, supra. We thus must affirm that finding.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.

AFFIRMED.