924 So.2d 224 (2005)
Sam BELL
v.
Durward DUNN.
No. 2004-CA-2117.
Court of Appeal of Louisiana, Fourth Circuit.
December 21, 2005.
Rehearing Denied March 10, 2006.
*227 Joel R. Waltzer, John L. Robert III, Waltzer & Associates, Harvey, LA, for Plaintiff/Appellant.
Bertrand M. Cass, Jr., William Kayser Terrill, Allen F. Campbell, Alexis M. Myers, Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY and Judge MAX N. TOBIAS JR.).
JOAN BERNARD ARMSTRONG, Chief Judge.
Plaintiff-appellant, Sam Bell, appeals a summary judgment dismissal of his personal injury claims asserted alternatively under the Jones Act or under § 905(b) of the Longshore and Harbor Workers Act (LHWCA)[1] against the defendant-appellee, Durward Dunn, Inc. ("Dunn"). For the reasons that follow, we reverse and remand.
Plaintiff was allegedly injured while working for Dunn on the construction of a railroad bridge over water. Each day Dunn ferried the plaintiff to the job site aboard a small boat, where he was delivered to a special purpose vessel known as a "spud barge". He did most of his work from the spud barge. He was assigned to demolish "footings" from inside a basket that was suspended from a crane located on the spud barge. However, one day he accessed what was referred to variously as a "floating work platform" by Dunn and a *228 "pontoon" by the plaintiff, by climbing down a ladder from the land. The platform/pontoon was lowered into the water from the spud barge by the barge crane. The platform/pontoon was stored on the barge when not in use. It was used when the barge could not get close enough to the footings for the crew to work. A board or plank was extended over the side of the platform/pontoon to allow the crew even closer access to the footing.
Plaintiff allegedly slipped on the wet plank because it lacked a non-slip surface. He ricocheted off a bridge footing and then fell into Unknown Pass, a natural navigable waterway connecting Lake Borgne with Lake Catherine, resulting in a back injury.[2]
Dunn moved for the summary judgment dismissal of plaintiff's Jones Act claim, contending that the plaintiff was not a Jones Act seaman because he was a shoreside worker, temporarily assigned to work on the construction of a railroad bridge over water, and he did not have a substantial connection to a vessel in navigation.
Dunn also moved for the summary judgment dismissal of plaintiff's claim under § 905(b) of the LHWCA arguing only that the platform-pontoon was not a vessel.
The trial court granted Dunn's motion for summary judgment in a combined "Judgment and Reasons for Judgment," based on findings that: (1) plaintiff was a temporary worker, and (2) the work platform where the accident occurred was not a vessel.
While the trial court's judgment does not specify which of these reasons applies to which of the plaintiff's alternative claims, we can deduce the answer. The "temporary worker" finding, of necessity, must relate to the plaintiff's Jones Act claim because recovery under the LHWCA does not depend on any such distinction, and Dunn did contend otherwise in the trial court. The "vessel" finding, of necessity, relates to plaintiff's claim under the LHWCA because Dunn did not challenge the "vessel" aspect of the plaintiff's Jones Act claim in the trial court.
First, we note that the basic facts upon which this appeal is based are not really in dispute. However, despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. Willis v. Medders, 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050. The court must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion. Id.; Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257, pp. 16-17 (La.2/29/00), 755 So.2d 226, 236. Thus, even where the facts are not disputed, "genuine issues" in a La. C.C.P. art. 966 sense may exist as to what inferences might be drawn from those facts in those instances where reasonable fact finders might differ as to the meaning of such inferences. Where such inferences are "material" in a La. C.C.P. art. 966 sense, then summary judgment is not appropriate. In other words, pursuant to Willis and Independent Fire, inferences to be drawn from facts are part of the fact finding process and are capable of precluding summary judgment, even when the facts are not in dispute, either because the facts are uncontested or because one of the parties has failed to offer evidence in opposition that meets the technical requirements of La. C.C.P. arts. 966 and 967. Therefore, plaintiff's appeal will have merit if he can show that there are genuine *229 issues concerning material inferences to be drawn from the undisputed facts. This is basically the essence of the plaintiff's argument in this appeal.
In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.[3]Cenance v. Tassin, 03-1379, p. 3 (La.App. 4 Cir. 3/3/04), 869 So.2d 913, 916.
We are also aware that the mere fact that the parties may dispute facts, or the inferences to be drawn from those facts, does not mean that a "genuine issue" exists. The standard for finding a "genuine issue" is not whether the parties disagree, for we may accept as a given that the parties will usually not be in agreement, but whether reasonable fact finders could reach different conclusions. Only if reasonable fact finders could reach different conclusions are we entitled to find that a genuine issue exists.
In addition to these general summary judgment standards, we must bear in mind the more specific standard applicable to the instant case, "that the question of seaman status should only be removed from the trier of fact (by summary judgment or directed verdict) in rare circumstances and that even marginal Jones Act claims should be submitted to the jury." Bernard v. Binnings Constr. Co., Inc., 741 F.2d 824, 827 (5th Cir.1984); Daniel v. Ergon, Inc., 892 F.2d 403 (5th Cir.1990).

I. PLAINTIFF'S JONES ACT CLAIM.
Plaintiff was employed by Tradesman International ("Tradesman")[4], an employment or temporary services agency for labor. Tradesman supplied construction workers to contractors. Plaintiff never performed any real work directly for Tradesman and Dunn does not contend that he ever would, even upon the conclusion of his work for Dunn. Tradesman assigned the plaintiff to work for Dunn on the railroad bridge construction project. This was plaintiff's first assignment with Tradesman. In support of its motion for summary judgment below, Dunn argued that an "employer-employee relationship is a prerequisite to a Jones Act claim", but then went on to concede that, "for purposes of this motion for summary judgment, it must be assumed that Sam Bell was Durward Dunn's borrowed servant or borrowed employee." [Emphasis added.] Therefore, for purposes of this motion for summary judgment we consider the plaintiff to be Dunn's employee. This in turn renders Dunn's arguments concerning the potential nature of the plaintiff's future employment with Tradesman upon the conclusion of his work with Dunn irrelevant.
The leading case on this issue, Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995), requires the following two-prong test as a prerequisite for seaman status under the Jones Act: (1) the employee's duties must contribute to the function of the vessel or to the accomplishment of its mission, and (2) the employee must have a connection to *230 a vessel in navigation, or to a group of such vessels, that is substantial in terms of both its duration and nature.
The plaintiff allegedly was injured when he slipped and fell while working for Dunn on the platform/pontoon. A reasonable fact finder could find that the platform/pontoon was an appurtenance of or an accessory to the spud barge. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 535, 115 S.Ct. 1043, 1049, 130 L.Ed.2d 1024 (1995); Anderson v. U.S., 317 F.3d 1235, 1238 (11th Cir. 2003). While Dunn disputes on appeal that the platform/pontoon was a vessel for purposes of § 905(b) of the LHWCA, Dunn concedes that the spud barge was a vessel and that the work plaintiff was performing on the platform/pontoon at the time he was injured was in furtherance of the function of the vessel and the accomplishment of its mission for Jones Act purposes. Dunn's brief on appeal states that:
[Plaintiff] is correct that the Chandris Court set forth a two-pronged test to achieve Jones Act seaman status. . . . The first prong of the test, that the employee's duties must contribute to the function of the vessel  i.e., the spud barge  or the accomplishment of its mission, is easily met  and is so met in this case."
Similarly, Dunn's "Memorandum in Support of Motion for Summary Judgment" in the trial court argued that the disqualifying factor for plaintiff's Jones Act claim was the temporary and transitory nature of his employment with Dunn. As to the vessel status of the spud barge, Dunn specifically refrained from raising that as an issue in its motion for summary judgment in the trial court as may be seen by reference to the following statement found in Dunn's Memorandum in Support of Motion for Summary Judgment:
Whether or not the spud barge was a vessel in navigation[[5]] is another question, but is not considered by this motion for summary judgment.
In other words, Dunn acknowledges that the plaintiff qualifies as a seaman under the first prong of the Chandris test. It is only under the second prong of the Chandris test that Dunn disputes plaintiff's status as a Jones Act seaman, i.e., Dunn contends that the plaintiff's connection to the vessel in question, in this case the spud barge, is not sufficiently substantial in terms of both its duration and nature.
The Supreme Court in Chandris stated that:
We agree with the Court of Appeals that seaman status is not merely a temporal concept, but we also believe that it necessarily includes a temporal element. A maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land based and therefore, *231 not a member of the vessel's crew, regardless of what his duties are. Naturally, substantiality in this context is determined by reference to the period covered by the Jones Act plaintiff's maritime employment, rather than by some absolute measure. Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. [Emphasis added.]
Id., 515 U.S. at 371, 115 S.Ct. at 2192
Dunn argues that for purposes of applying the 30% Chandris test we should view the duration of plaintiff's employment in the "broader and more sensible" context of his employment with Tradesman.
Dunn's bridge project was plaintiff's first assignment with Tradesman. Thus, at the time of the accident plaintiff's relationship with Dunn was coextensive with his relationship to Tradesman. However, Dunn argues that the plaintiff should be considered to be a land-based worker because he was a land-based worker before signing on with Tradesman and it was Tradesman's intention to return him to land-based work upon the conclusion of his work with Dunn. We find this argument to be inconsistent with Dunn's acknowledgment that plaintiff should be considered to be its borrowed servant or borrowed employee.
Plaintiff worked for seventeen days for Dunn from the end of October 18, 2001 through November 19, 2001. Only two of those days could be characterized as land-based. While the plaintiff's employment with Dunn was of short duration, there is no dispute that the plaintiff spent over 80% of that time in the service of a vessel.
Thus, the Jones Act issue in the instant case boils down to this: Is there enough of an issue to warrant letting the jury decide whether an employee meets the duration test when his employment is of short duration, but he spends substantially all of that time in the furtherance of the function of the vessel and the accomplishment of its mission, as the plaintiff is conceded to have done in the instant case? We find that the plaintiff is entitled to have a jury view his activities in the context of his work with his current employer which, in the instant case, was Dunn. This conclusion is analogous to the position taken by the Chandris court:
For example, we can imagine situations in which someone who had worked for years in an employer's shoreside headquarters is then reassigned to a ship in a classic seaman's job that involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of a vessel. Such a person should not be denied seaman status if injured shortly after the reassignment.. . .
Id., 515 U.S. at 372, 115 S.Ct. at 2191.
The court reached the same conclusion in Uzdavines v. Weeks Marine, Inc., 418 F.3d 138 (2nd Cir.8/3/05)), where the plaintiff had a thirty-five year land-based work history followed by a three to four week stretch of employment on the water similar to the time period in the instant case during which the plaintiff was employed by Dunn.
Although petitioner does not dispute that, for a period of three or four consecutive weeks, the decedent worked exclusively as an oiler aboard a dredge that was (1) located "in the middle of the water" and (2) moved across the channel . . . she nonetheless challenges [Administrative Law *232 Judge] Kaplan's determination that the decedent had a "substantial" connection to the dredge. Petitioner concedes that "under certain circumstances, four weeks of work could be a substantial connection to a vessel,". . ., but contends that ALJ Kaplan erred principally by failing to consider the decedent's work history which included predominantly land-based work over the course of thirty-five yearsprior to his work on the dredge.
As a preliminary matter, we conclude that ALJ Kaplan need not have considered the decedent's prior work history. The Supreme Court has unequivocally stated that "[t]here [is] no . . . need to examine the nature of an employee's duties with prior employers," Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 557[, 117 S.Ct. 1535, 137 L.Ed.2d 800] (1997), because this "would undermine the interests of employers and maritime workers alike in being able to predict who will be covered by the Jones Act . . . before a particular day begins," id. at 558[, 117 S.Ct. 1535]. . . . Therefore, if an employee "receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." Chandris, 515 U.S. at 372[, 115 S.Ct. 2172] (emphasis added.) The Supreme Court specifically contemplated "situations in which someone who had worked for years in an employer's shoreside headquarters is then reassigned to a ship in a . . . seaman's job that involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of the vessel." Id. In such circumstanceswhich strongly resemble those of decedent's employment aboard the dredge in the instant casethe Court concluded that "[s]uch a person should not be denied seaman status if injured shortly after the reassignment." Id.

Based on the record before us, we hold that, during the time period that the decedent worked aboard the dredge, he established a connection to the vessel that was "substantial in terms of both its duration and its nature" rather than merely "transitory or sporadic." Chandris, 515 U.S. at 368[, 115 S.Ct. 2172].
Id. [Emphasis added.]
Dunn argues that "temporary and transient workers who fortuitously find themselves aboard watercraft at the time of their injury are not considered Jones Act seamen." Dunn cites a number of cases in support of this proposition, all of which are worthy of consideration and discussion.
The first of these, Sider v. Robin Temp. Serv., 515 So.2d 1123, 1129 (La.App. 5 Cir.1987), has many similarities to the instant case. In Sider, the plaintiff was a laborer supplied to a barge cleaning service by Robin Temporary Service ("Robin"), a temporary employment agency. However, our reading of Sider indicates that the laborer in that case had to report every morning to Robin at 5:00 A.M. whence he was sent out on assignment. In other words, while the laborer in Sider could have been assigned to the same workplace on consecutive days, the assignment was only for one day at a time. The Sider court noted testimony to the effect that the barge cleaning service cleaned different barges every day and that the barges belonged to different owners. In the context of the second prong of the Chandris test, the prong upon which the outcome of this case depends, we would *233 say that this meant that the laborer-plaintiff in Sider could never be said to have been assigned to a vessel or group of vessels.
Thus, while the facts in Sider are similar to those of the instant case, they are different in critical ways. In the instant case, the record does not reflect, and Dunn does not contend, that plaintiff reported to Tradesman on a daily basis for a job assignment. Instead, he was permanently assigned to Dunn for the duration of the job, where he worked consistently in connection with a single vessel owned and operated by Dunn, the spud barge, or arguably, two vessels or a vessel and an appurtenance/accessory to the vessel (the platform/pontoon) owned and operated by Dunn. It is also significant that Sider was not decided on a motion for summary judgment. In fact, the defendants' motions for summary judgment were denied in Sider, and when those defendants applied to the appellate court for writs, (the same appellate court that eventually was to author Sider), the writ application was denied. Based on the foregoing analysis, we find that the reasoning in Sider, viewed through the lens of the more recent Chandris case, indicates that the instant case should not have been decided on a motion for summary judgment.
Daniel v. Ergon, Inc., 892 F.2d 403 (5th Cir.1990) is inapposite because the court found that there was no "vessel" for Jones Act purposes as distinguished from the instant case where it has been conceded that the plaintiff was assigned to a Jones Act vessel. Moreover, we note that in Daniel, as in Sider, the case was not decided on a motion for summary judgment, the defendants' motion for summary judgment having been denied prior to trial. The Daniel court reiterated the well recognized principle that:
Seaman status is ordinarily a question for the trier of fact and even where facts are largely undisputed, the jury's role should not be lightly shortcircuited. Bernard v. Binnings Constr. Co., 741 F.2d 824, 827 (5th Cir.1984). Thus the issue of seaman status "should only be removed from the trier of fact (by summary judgment or directed verdict) in rare circumstances. . . and even marginal Jones Act claims should be submitted to the jury. Id. [Emphasis added.]
Id., at 407.
This is all that the plaintiff asks of this Court in the instant casethat the jury's role not be lightly short-circuited. We recognize that Daniel also explains that where only one rational inference can be drawn, then summary judgment may be proper. Id. However, nothing in the Daniel opinion stands as authority either as precedent or as persuasion for the proposition that the instant case is one of those cases where only one rational inference can be drawn and summary judgment is appropriate.
In Dean v. Ramos Corp., 00-1621 (La. App. 5 Cir. 2/28/01), 781 So.2d 796, unlike in the instant case, the temporary employment service was sued along with the company to which the plaintiff-laborer was assigned. The temporary employment service (the analogue of Tradesman in the instant case) was dismissed on motion for summary judgment. The appellate court noted that that employer assigned him generally to land-based jobs unconnected to any vessel. Therefore, the court found that it was not error for the trial court to dismiss the plaintiff's case against the temporary employment service for lack of seaman's status vis-a-vis that employer. However, the motion for summary judgment of the employer to whom the plaintiff was assigned by the temporary employment *234 service (the analogue of Dunn in the instant case) was denied and that claim went to trial. It was only after a trial on the merits that the plaintiff's claim against the employer to which he was assigned was denied for lack of seaman status. By analogy, the plaintiff in the instant cases would be entitled to a trial on the merits.
In Little v. Amoco Production Co., 98-1130 (La.App. 1 Cir. 5/14/99), 734 So.2d 933, the trial court granted a summary judgment dismissing the injured plaintiff's claim based on a finding that the plaintiff had "no substantial connection with either a single vessel or with an identifiable fleet of vessels having common ownership or control. . . ." The plaintiff in Little worked on five different work assignments for his employer for a total of only forty-three hours over a three-week period. One was a land-based work assignment and the other four assignments were each to a different vessel. It was undisputed in Little that the plaintiff's employer neither owned nor controlled any of the vessels to which he was assigned, including the one on which he was injured. These facts are sufficiently different from those of the instant case that we cannot say that the results in Little mandate that the instant case should be taken away from the fact finder on motion for summary judgment.
In Doucet v. Computalog Wireline Services, Inc., 97-551 (La.App. 3 Cir. 10/29/97), 702 So.2d 1064, the appellate court affirmed the summary judgment dismissal of the injured plaintiff's claim based on a finding that while he was assigned by his employer to vessels 50% of the time (the other 50% of the time was devoted to land-based work), the vessels were not under common ownership and were neither owned nor controlled by his employer. Therefore, he was not a seaman under the second prong of the Chandris test.
In contrast to Doucet, in the instant case it is undisputed that the plaintiff was assigned to only one vessel, the spud barge (or its appurtenance or accessory platform/pontoon) and that that one vessel was owned and operated by his employer, Dunn. Moreover, we note that in Doucet, the court noted that it was "unusual" to grant summary judgment on the question of seaman's status.
Dunn relies on Richard v. Mike Hooks, Inc., 01-0145 (La. 10/16/01), 799 So.2d 462, in support of its argument that the 30% standard, referred to in Chandris and recognized by the jurisprudence in general, is not, in and of itself, sufficient to establish seaman's status. We agree. However, we note that Richard involved a trial on the merits, the trial judge having rejected the defendant's motion for summary judgment based on a finding that a reasonable jury could find that the plaintiff was a seaman. The Louisiana Supreme Court, in reviewing the results of the trial on the merits favorable to the plaintiff reversed, noting that, among other facts, none of the vessels serviced by the plaintiff were engaged in their primary mission at the time he serviced them. The vessels were all dockside and he was basically a land-based worker. We do not read Richard as authority for denying the plaintiff a trial on the merits in the instant case.
Becker v. Tidewater, Inc., 335 F.3d 376 (5th Cir.2003), involved a worker characterized by the court as a land-based worker who happened to be temporarily assigned by his employer to a vessel. Based on this finding, the Becker court relegated the plaintiff to remedies under the LHWCA. In the instant case, the plaintiff could not be characterized as Dunn's land-based employee. Thus, in Becker the concept of "temporary" was defined in the context of his employer at the time of his injury, not in the context of his employers *235 before and after his injury. Because the plaintiff was assigned by Dunn to only two days of land based work, in the context of plaintiff's employment with Dunn, a reasonable fact finder could conclude by analogy to Becker that the plaintiff in the instant case was a vessel-based employee and that the only aspect of the plaintiff's employment with Dunn that could be considered to be temporary were his brief interludes on land.
In support of the plaintiff's position, we note Manuel v. P.A.W. Drilling and Well Service, Inc., 135 F.3d 344 (5th Cir.1998), where the court held that a man employed for only two months should be considered to be a seaman, citing Chandris for the proposition that, "the adequacy of the plaintiff's connection to a vessel is properly assessed on the basis of his work assignment at the time of is injury." Id., at 352.
After having considered all of the foregoing jurisprudence, we find that the Uzdavines case presents the facts closest to those of the instant case on this issue and it contains the most current analysis of the applicable jurisprudence. Therefore, we give it the greatest weight in our deliberations.
Based on the foregoing, we find that genuine material issues exist concerning the plaintiff's Jones Act claim. Therefore, the plaintiff is entitled to a trial on the merits of his Jones Act claim.

II. PLAINTIFF'S CLAIM UNDER § 905(b) OF THE LHWCA
The plaintiff's alternative claim under the LHWCA turns on the provisions of 33 U.S.C. § 902(3) and § 902(4) and 33 U.S.C. § 905(b).
§ 902(3) defines "employee" as:
. . . any person engaged in maritime employment[6] . . . but such term does not include
* * *
(D) individuals who (i) are employed by suppliers, transporters, or vendors, (ii) are temporarily doing business on the premises of an employer described in paragraph (4), and (iii) are not engaged in work normally performed by employees of that employer under this chapter;
* * *
(G) a master or member of a crew of any vessel;
§ 902(4) defines "employer" as:
[A]n employer any of whose employees are employed in maritime employment[7], in whole or in part, upon the navigable waters of the United States. . . .
§ 905(b) defines who may recover upon the LHWCA:
In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party. . . .
Thus plaintiff's claim under the LHWCA arises under § 905(b) as an "action against such vessel," naming Dunn as the defendant-owner of the vessel. Dunn does not contest this procedural aspect of the plaintiff's claim.
Dunn argues that plaintiff does not qualify for coverage under § 905(b) of the LHWCA, citing Orgeron v. Avondale Shipyards, Inc., 561 So.2d 38 (La.1990), because the plaintiff "was neither in the *236 course of a traditional maritime activity at the time he sustained his alleged injury nor on a structure that qualifies as a vessel."
We will address the vessel issue first.

A. The plaintiff was injured on a vessel or an appurtenance of a vessel.
First, as noted earlier in this opinion, Dunn's motion for summary judgment did not challenge the vessel status of the spud barge. Having conceded that the spud barge is a vessel, as a matter of law an accessory or appurtenance to the vessel is treated as part of the vessel. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 535, 115 S.Ct. 1043, 1049, 130 L.Ed.2d 1024 (1995); Anderson v. U.S., 317 F.3d 1235, 1238 (11th Cir. 2003). The factual question as to whether a structure is a vessel is a matter to be decided by the trier of fact and even marginal claims are to be left for the jury. Ebanks v. Reserve Marine Enterprises, Inc., 625 So.2d 1050 (La.1993). Even if the platform/pontoon was not a vessel itself, a reasonable fact finder could conclude that it was at least an accessory of the spud barge. Accordingly, this issue should be allowed to go to the jury and not decided on a motion for summary judgment.
Additionally, we note that in the past there have been a number of cases in which a distinction has been drawn between the meaning of the term "vessel" for Jones Act purposes as opposed to the meaning of "vessel" for purposes of the LHWCA. Orgeron v. Avondale Shipyards, Inc., 561 So.2d 38, 43 (La.1990). This is particularly important in the instant case because, as noted in the section of this opinion regarding plaintiff's Jones Act claim, Dunn has acknowledged that the spud barge was a vessel for Jones Act purposes. Therefore, Dunn cannot prevail on this issue unless, as a matter of law, the definition of vessel is different under the LHWCA.
We read the very recent Supreme Court case of Stewart v. Dutra Construction Co., 543 U.S. 481, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005), as standing athwart those cases that would draw a distinction between the Jones Act and the LHWCA definition of the term "vessel." As the Stewart stated:
We granted certiorari to resolve confusion over how to determine whether a watercraft is a "vessel" for purposes of the LHWCA.
Id., 125 S.Ct. at 1123. This means that the Supreme Court intends its pronouncements in Stewart to establish the standards across the jurisprudence for determining whether a watercraft is a vessel under the LHWCA, standards intended for general application, and not to be limited to the Stewart facts.
In Stewart, the court was faced with a dredge (the Super Scoop) that could only move when towed by tug or by manipulating its anchors and cables, i.e., it was not propelled by currents, by sail, by motor or by oars. The court emphasized that in order to qualify as a vessel a watercraft need only be "capable" of being used as a means of transportation on water. It need not be primarily so used and it need not be in motion at the time in question.
1 U.S.C. § 3 defines "vessel" broadly:
The word "vessel includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."
Stewart explains that this 1 U.S.C. § 3 definition of the term "vessel" is to be used consistently throughout both the LHWCA and the Jones Act. Holmes v. Atlantic Sounding Co., Inc., 437 F.3d 441 (5th Cir.1/19/06); Bunch v. Canton Marine *237 Towing Co., Inc., 419 F.3d 868 (8th Cir.8/23/05). It is not the definition of "vessel" that distinguishes the scope of the Jones Act from that of the LHWCA. Rather, it is other aspects of the Jones Act that distinguish its scope from that of the LHWCA:
Applying [1 U.S.C.] § 3 brings within the purview of the Jones Act the sorts of watercraft considered vessels at the time Congress passed the Act. By including specialpurpose vessels like dredges, § 3 sweeps broadly, but the other prerequisites to qualifying for seaman status under the Jones Act provide some limits, notwithstanding § 3's breadth. A maritime worker seeking Jones Act status must also prove that his duties contributed to the vessel's function or mission, and that his connection to the vessel was substantial both in nature and duration. Chandris, 515 U.S., at 376, 115 S.Ct. 2172. Thus, even though the Super Scoop is a "vessel," workers injured aboard the Super Scoop are eligible for seaman status only if they are "master[s] or member[s]" of its crew.
* * *
Granted, the Court has sometimes spoken of the requirement that a vessel be "in navigation," id., at 373-374, 115 S.Ct. 2172, but never to indicate a structure's locomotion at any given moment mattered.
* * *
Finally, although Dutra argues that the Super Scoop is not a "vessel" under § 902(3)(G), which is the LHWCA provision that excludes seamen form the Act's coverage[[8]], Dutra conceded below that the Super Scoop is a "vessel" under § 905(b), which is the LHWCA provision that imposes liability on vessel owners for negligence to longshoremen. The concession was necessary because the Court of Appeals had previously held that § 905(b)'s use of the term "vessel" is "`significantly more inclusive than that used for evaluating seaman status under the Jones Act.'" 343 F.3d, at 13 (quoting Morehead v. Atkinson-Kiewit, 97 F.3d, at 607). The Court of Appeals' approach is no longer tenable. The LHWCA does not meaningfully define the term "vessel" as it appears in either § 902(3)(G) or § 905(b), see n. 2, supra, and 1 U.S.C. § 3 defines the term "vessel" throughout the LHWCA [Emphasis added.]. . . .
[A] "vessel" is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment.
Id., 125 S.Ct. at pp. 1127-1129.
Therefore, applying Stewart to the instant case, Dunn's concession of vessel status for Jones Act purposes effectively concedes that status for purposes of the plaintiff's claim under the LHWCA.
Moreover, even in the absence of any concessions Dunn may have made regarding the issue of vessel status, we note that a reasonable fact finder could infer that the spud barge and its accessory/appurtenance platform/pontoon had vessel status. Stewart defines vessel broadly:
The Court of Appeals, relying on its previous en banc decision in DiGiovanni v. Traylor Brothers, Inc. 959 F.2d 1119 (C.A.1 1992), held that the *238 Super Scoop is not a "vessel," because its primary purpose is not navigation or commerce and because it was not in actual transit at the time of Stewart's injury. 230 F.3d, at 468-469. Neither prong of the Court of Appeals' test is consistent with the text of § 3 or the established meaning of the term "vessel" in general maritime law.
Section 3 requires only that a watercraft be "used, or capable of being used, as a means of transportation on water" to qualify as a vessel. It does not mean that a watercraft be used primarily [[9]] for that purpose. [Emphasis added.]
Id., 125 S.Ct. at 1127-1128.
Dunn argues that Stewart did not change the controlling law in this matter. If Stewart did not change the law, at the very least it corrected various misstatements of the law that permeated the jurisprudence in this area. As proof of this, in spite of the fact that Stewart is a very recent pronouncement, its impact on the courts is already being felt. For example, in Uzdavines v. Weeks Marine, Inc., 418 F.3d 138 (2nd Cir.8/3/05), the court held:
The Supreme Court's decision in [Stewart] supersedes the three-part-test we developed in Tonnesen v. Yonkers Contracting Co., 82 F.3d 30 (2d Cir.1996), which stated that a floating structure would not qualify as a "vessel in navigation" if, inter alia, the "transportation function performed by the [purported vessel] was merely incidental to its primary purpose of serving as a work platform." Id. at 36. On the basis of [Stewart], we conclude that the test announced in Tonnesen no longer applies. . . [Emphasis added.]
Id.
The Uzdavines analysis of Stewart, with which this Court agrees, as leading to the rejection of the "primary purpose" test, calls into question the following language quoted from Bernard v. Binnings Constr. Co., Inc., 741 F.2d 824, 827 (5th Cir.1984), by Dunn in its trial court "Memorandum in Support of Summary Judgment":
. . . our decisions make clear that a structure whose primary function is to serve as a work platform does not become a vessel even if it sometimes moves significant distances across navigable waters in the course of normal operations.

Id. at 832.
Therefore, it would be error to rely on this language from Binnings in finding that no reasonable fact finder could find "vessel" status in the instant case.
Based on the foregoing, we find that a reasonable fact finder could conclude that a vessel existed for LHWCA purposes, i.e., a genuine material issue exists. Therefore, the issue should be allowed to go to the jury.

B. There is a genuine issue as to whether the plaintiff was engaged in a traditional maritime activity.
Dunn contends that the plaintiff is disqualified under the LHWCA because he was not engaged in a traditional maritime activity. The plaintiff counters that in the trial court Dunn raised only the issue of whether the platform/pontoon was a vessel, and that Dunn did not raise the issue of whether the plaintiff was engaged in a traditional maritime activity at the *239 time of his injury. While it is true that this Court in reliance upon Wilson v. Head, 97-0992, p. 1 (La.App. 3 Cir. 2/4/98), 707 So.2d 127, 128, stated in Faulkner v. The McCarty Corporation, 02-1337 (La.App. 4 Cir. 6/11/03), 853 So.2d 24, 27 that: "[I]ssues not brought before the trial court cannot be considered for the first time on appeal"; based on analysis set forth in the ensuing paragraphs, we need not reach the question of how broadly the statement in Wilson was intended to be applied[10].
While it is true that Dunn did not make this argument concerning plaintiff's "significant relationship to traditional maritime activity," in those exact words in the trial court, it was the plaintiff, not Dunn, who originally cited the Orgeron case to the trial court (in his opposition to Dunn's motion for summary judgment) and on this appeal (in plaintiff's original brief). The plaintiff has no basis for complaining about the defendant's resort to a case cited by the plaintiff. Furthermore, the parties argued extensively concerning the nature of the plaintiff's employment activities in the trial court. Dunn has argued all along that the plaintiff is not entitled to recover under the LHWCA. This is really more a new argument than a new issue, and a party is always allowed to raise new arguments.
Moreover, we cannot imagine what additional evidence the plaintiff would have offered below on this issue, and the plaintiff does not suggest the existence of any such evidence. The plaintiff does not contend that he has been prejudiced in any way by consideration of this argument. We find that the objection in this case is more technical than real, more form than substance, and, just as appeals are favored, where there is any doubt, this Court should take a liberal view of allowing parties to present their arguments on appeal. Therefore, we will entertain Dunn's argument on this issue.
As Orgeron, supra, is obviously considered central to this case by both parties, it is worth considering in detail. Orgeron notes that the LHWCA and the Jones Act offer mutually exclusive remedies. 561 So.2d at 40. Furthermore:
A Jones Act seaman must have a more or less permanent attachment to a vessel or fleet of vessels, [footnote 9 omitted] while recovery under Section 5(b) of the LHWCA can be based upon transitory contact with a vessel. [Emphasis added.]
Id., 561 So.2d at 41.
Orgeron goes on to explain that:
[I]n addition to a compensation claim against his employer, a longshore or harbor worker may bring an action under 33 U.S.C. § 905(b) against a vessel owner as a third party to recover damages for an injury caused by negligence of a vessel.
Id.
The Orgeron court then observed that, "the term vessel in the LHWCA is not synonymous with the term vessel in the Jones Act." Our analysis of Stewart supra, however, indicates that the United States Supreme Court recently rejected this position.
The Louisiana Supreme Court in Orgeron noted that the "issue of whether a barge performed a transportation function as a primary or incidental matter relates to vessel status under the Jones Act" and is not the standard under the LHWCA. Id., 561 So.2d at 43. The fact that barges are pushed or pulled into various locations rather than self-propelled does not remove *240 them from the category of § 905(b) vessels. In Orgeron, the claimant was working on a barge used as a floating work platform, much as the platform/pontoon or spud barge was used in the instant case. The Orgeron court held:
The trial court erred in concluding that these pontoons/barges were not vessels. They were clearly capable of transportation and moved periodically around the stretch of navigable water fronting the Harvey Quick Repair Yard. They performed a transportation function.
Id., 561 So.2d at 43-44.
The barges in Orgeron were pushed or pulled where needed. Id., 561 So.2d at 40. While the facts in the instant case are not identical to those of Orgeron, the platform/pontoon and spud barge in the instant case are close enough in their natures and uses to weigh in favor of allowing a jury make the judgment call. We are supported in this view by the fact that our reading of footnotes 14-16 of Orgeron and the conflicts in the cases noted by Orgeron, which make it difficult to determine how much weight we are expected to give to the "traditional maritime activity" factor in determining vessel status. We note that in Estay v. Terminal Stevedores, Inc., 01-1011 (La.App. 5 Cir. 12/26/01), 806 So.2d 790 the court made no mention of "traditional maritime activity". In any event, we know from Stewart and Uzdavines, supra, that a watercraft may be considered to be a "vessel" even if its primary function is not maritime.
While it is true that this Court sustained a partial summary judgment dismissal of the tort claim under the LHWCA of a plaintiff who was injured doing bridge construction work in Dean v. State of Louisiana, 542 So.2d 742 (La.App. 4 Cir.1989), that result was based largely on the finding that the injury was really land-based in nature. The plaintiff stepped from a wharf onto a piling whence he fell into a barge, resulting in injuries. This Court noted that:
The only vehicle involved was the barge into which plaintiff fell when he lost his footing. We consider the plaintiff's fall into the barge fortuitous since the plaintiff might just as likely have fallen back onto the wharf. Thus, the involvement of the barge is somewhat attenuated and, in itself, does not create a significant nexus to maritime activity.
The instrumentality involved was the piling which shifted under the plaintiff's weight. It appears from the record that the piling was part of the wharf and for this reason we consider it to be landward of navigable waters.
Because we consider plaintiff's fall into the barge purely fortuitous, we hold that the fact that the plaintiff's fall had its inception on land should carry more weight than the fact his injury culminated when he landed on the barge.
* * *
In addition, plaintiff's injuries are indistinguishable from injuries sustained in land-based slip and fall claims, despite that the injuries culminated on the barge.
Id., 542 So.2d at pp. 746-747. [Emphasis supplied.]
A careful reading of this Court's decision in Dean shows that it was an aggregation of factors that led to the decision to sustain the lower court's summary judgment dismissal of the plaintiff's § 905(b) claim, the least of which was the fact that he was engaged in building a bridge over water.
*241 Of even greater significance is the fact that in Dean this Court rejected the cases cited by the plaintiff (LeMelle v. B.F. Diamond Construction Co., 674 F.2d 296 (4th Cir.1982), cert. den. B.F. Diamond Construction Co., Inc. v. LeMelle, 459 U.S. 1177, 103 S.Ct. 830, 74 L.Ed.2d 1024 (1983) and Director, Office of Workers' Compensation Programs, United States Department of Labor v. Perini North River Associates, 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983)) in support of his contention that his construction work on a bridge over water should be considered to be "maritime employment" because those cases relied on § 902(3) of the LHWCA instead of § 905(b). This Court held that:
Appellant's reliance on Director and LeMelle is misplaced. Federal standards which are used to determine the functions and roles of the parties in the analysis of maritime nexus for purposes of establishing federal admiralty jurisdiction or a 905(b) action have proved more stringent than those used to determine whether a claimant is engaged in maritime employment and thus a covered "employee" under 902(3) who is entitled to compensation benefits under the LHWCA. Id., 542 So.2d at 746.
This distinction perceived by this Court in Dean between meanings found in § 902(3) and those found in § 905(b) is no longer valid in view of the language of the United States Supreme Court in Stewart, supra, indicating that there is no basis for inferring that the same terms and concepts should be given different meanings depending on whether they appear in § 902(3) or § 905(b). Id., 125 S.Ct. at 1129. In light of Stewart, we can no longer accept as valid this Court's rejection in Dean[11] of the decisions in Director and LeMelle for § 905(b) purposes in determining the maritime nature of the plaintiff's employment. Therefore, as a reasonable fact finder might conclude that the plaintiff's employment with Dunn involved a traditional maritime activity pursuant to Director and LeMelle, a genuine issue exists. The plaintiff is entitled to a jury trial on this issue.

CONCLUSION AND DECREE
The basic facts are not really in dispute in this case. Typically, in summary judgment cases where the facts are not in dispute, summary judgment is appropriate. The difference in this case is that while the basic facts are not in dispute, reasonable fact finders might draw different inferences and reach different findings based on those facts. Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. Willis, supra; Independent Fire Ins., supra. There are different ways in which the material facts of this case might reasonably be viewed. Genuine issues exist as to the material questions of whether the plaintiff was a Jones Act seaman or, if not, whether he was entitled to recover under the LHWCA. The record as it now stands would permit a reasonable fact finder to reach either conclusion, among others. Therefore, the plaintiff is entitled to a jury trial. This is especially true where, as here, the trial judge acknowledged in the course of the hearing on the motion for summary judgment that this was a close case. Where the question of the plaintiff's right to proceed under the LHWCA or the Jones Act is a close question of fact, on a motion for summary judgment, the plaintiff *242 should be given the benefit of the doubt. Id.
For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] It is uncontested that these two remedies are mutually exclusive, i.e., proof of entitlement to recover under one provision disqualifies the claimant from recovering under the other.
[2] The extent of plaintiff's damages is not before this Court.
[3] The summary judgment analogy to the manifest error standard review of a trial on the merits breaks down in dealing with these issues as they are all questions that may be looked into subject to the manifest error standard, but may not be considered on a motion for summary judgment. For example, the appellate court may reject a trial court's credibility findings based on contradiction by objective evidence or internal inconsistency, but the credibility of an affiant or a deponent may not be challenged on a motion for summary judgment.
[4] Tradesman is not a party to this litigation.
[5] In view of certain pronouncements found in the recent case of Stewart v. Dutra Construction Co., 543 U.S. 481, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005), it is doubtful whether the phrase "in navigation" creates any material distinction between Jones Act (where the phrase "in navigation" appears) vessel requirements and LHWCA vessel requirements, at least not in the context of the instant case:

Granted the Court has sometimes spoken of the requirement that a vessel be "in navigation, [Chandris], at 373-374, 115 S.Ct. 2172, but never to indicate that a structure's locomotion at any given moment mattered. Rather, the point was that structures may lose their character as vessels if they have been withdrawn from the water for extended periods of time. [Citations omitted.] The Court did not mean that "in navigation" requirement stood apart from § 3, such that a "vessel" for purposes of § 3 might nevertheless not be a "vessel in navigation" for purposes of the Jones Act or the LHWCA. [Emphasis added.]
[6] Emphasis added.
[7] Emphasis added.
[8] This is the provision that makes the LHWCA and the Jones Act mutually exclusive as the Jones act applies to "seamen" and the LHWCA does not.
[9] Italics original.
[10] In Wilson it appears that the question was whether new evidence could be offered for the first time on appeal which is very different from what Dunn is arguing to this Court.
[11] This Court's citation to Dean in Antill v. Public Grain Elevator of New Orleans, Inc., 577 So.2d 1039, 1041 (La.App. 4 Cir.1991) in no way ameliorates the conflict between the reasoning in Dean and that of the United States Supreme Court in Stewart.