JUDE G. GRAVOIS, Judge.
 

 |?In this suit under the Jones Act, 46 U.S.C.A.App. § 688, appellant Robert Charles Blanda, Jr. (“Blanda”) appeals the trial court’s grant of summary judgment in favor of defendant Kathryn Rae Towing, Inc. MTV TAK 1 (“KRT”). The trial court found that Blanda was not in the course and scope of his employment at the time of his accident and injuries, thus finding no liability against KRT under the Jones Act and dismissing Blanda’s case against KRT. This appeal followed. For the reasons that follow, we affirm.
 

 FACTS
 

 On December 19, 2003, Blanda was seriously injured in a car accident on River Road in St. Charles Parish. At the time of the accident, Blanda was employed by KRT. He was working a 14-day “hitch” and had just finished a 12-hour shift and
 
 *357
 
 had left the boat to do his laundry. His captain on the shift, Robert Mizell, who had also just finished a 12-hour shift, was on his way home, driving his personal vehicle, and had agreed to give Blanda a ride because Blanda had no | ^vehicle. As the two men were traveling on River Road in St. Charles Parish, their car was struck by a drunk driver who crossed into their lane and hit them head-on. As a result of the accident, Blanda sustained serious injuries that necessitated surgery and a lengthy hospital stay.
 

 ANALYSIS
 

 Appellate courts review a district court’s grant of summary judgment
 
 de novo,
 
 viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant.
 
 Hines v. Garrett,
 
 04-0806 (La.6/25/04), 876 So.2d 764, 765. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. In ruling on a motion for summary judgment, the judge’s role is to determine whether there is a genuine issue of triable fact with all doubts being resolved in the non-moving party’s favor.
 
 Hines,
 
 876 So.2d at 765. A material fact is one that potentially insures or prevents recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit.
 
 Smith v. Our Lady of the Lake Hosp., Inc.,
 
 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751.
 

 Initially, we note that Blanda contends that summary judgments in Jones Act cases have a more specific standard than other civil cases, namely that “the question of seaman status should only be removed from the jury in rare circumstances and that even marginal Jones Act claims should be submitted to the jury,” quoting
 
 Bell v. Dunn,
 
 04-2117 (La.App. 4 Cir. 12/21/05), 924 So.2d 224. KRT points out, however, that courts have applied summary judgment standards in |4cases postured similarly to the instant one, citing as an example
 
 Robair v. Penrod Drilling Corp.,
 
 98-0222 (La.App. 4 Cir. 10/7/98), 720 So.2d 130.
 

 We find
 
 Bell v. Dunn
 
 distinguishable from the instant case. Blanda’s status as a seaman was not in question in this case. Rather, the issue that was properly before the court on the motion for summary judgment was whether or not Blanda was in the course and scope of his employment at the time of the accident in question.
 

 The Jones Act, 46 U.S.C.A.App. § 688, provides a cause of action against a maritime employer based on negligence when a seaman is injured in the course and scope of his employment. As the court noted in
 
 Robair:
 

 Courts consider two factors in determining whether a seaman was in the course and scope of his employment or in the service of the ship when injured upon land: (1) the degree of control the employer-vessel owner had over the seaman at the time of injury; and (2) whether the seaman, at the time of the injury, was on personal business or on a mission for the benefit of his employer or attending to the business of his employer. (Citation omitted.) In order for the degree of control to be sufficient for the employer to be held liable, the seaman must have (1) been on authorized shore leave at the time of his injury, and (2) been answerable to the call of duty at the time of his injury. (Citations omitted.) If either element is missing, a seaman cannot, as a matter of law, recover under either the Jones Act.
 

 Robair,
 
 720 So.2d at 132.
 

 
 *358
 
 Blanda argues on appeal that material issues of fact remain disputed, including the degree of control, whether by merely riding with his captain, the plaintiff was subject to the control of the vessel and his employer, whether plaintiff was on a mission of the vessel or personal business, and whether the vessel’s failure to maintain its clothes washing machine forced the plaintiff to leave the ship to get his laundry done, and whether in doing so, he was on a mission for the vessel.
 

 |sThe record shows that Blanda was employed by KRT as a deckhand on the TAK 1, a towboat working on the Mississippi River, at the time of his injuries. The crews worked a rotating schedule of fourteen days on followed by seven days off, a work period commonly known as a fourteen on/seven off hitch. They worked 12 hours per day during the 14-day hitches. After completing the 14-day hitch, they were off for seven days before returning to the schedule described above. The crews were paid a day rate only for the 12 hours that they actually worked aboard the vessel. They were not paid beyond the 12 hours per day when they were off duty and/or off of the vessel. They were also not paid for time spent traveling to or from the vessel for crew change on any given day. Crew members were responsible for providing their own transportation to and from the vessel for daily crew change, though at some time in the past a van had been provided. KRT did not reimburse crew members for any expenses associated with their travel, including mileage, gas, maintenance or insurance. The crews were free to leave the boat at the end of their 12-hour shift. Deckhands might occasionally be offered an opportunity to work during their off hours but were not required to do so as a condition of their employment.
 

 At the time of the accident, Blanda was riding in Captain Mizell’s personal vehicle. The two men had just finished their 12-hour shift and Captain Mizell was on his way home, having agreed to give Blanda a ride to somewhere on shore as Blanda had no vehicle of his own. Mizell testified in deposition that he himself was off duty and was not subject to the call of the vessel for the next 12 hours. As a deckhand, during his 12 hours off, Blanda was likewise off duty and was not required to work additional hours on the vessel, though he could chose to do so if called. On the day in question, Blanda had not been asked to work additional hours. Mizell testified that he had sometimes given Blanda a ride in the past if | tiBlanda’s destination was on his way, but did not always give Blanda a ride when he asked.
 

 In his suit, Blanda argued that at the time of the accident, he was subject to the “call of the vessel” because of the agreement . his mother made with the KRT’s safety director, Keith Savoie, to keep Blan-da on the boat during his 12 hours off, given his tendency to “get into trouble” while off the boat. Catherine Williams, Blanda’s mother, claimed that the agreement amounted to a contractual obligation to keep Blanda on the boat during his 12 hours off. Savoie testified in deposition that he agreed with Mrs. Williams that Blanda would be allowed to remain on the boat during his 12 hours off, but stated further at the deposition that he was not a “day care center” and that Blanda had never been required to remain on the boat when he was off duty. Blanda himself testified in deposition that he, in fact, did not always remain on the boat during his 12 hours off, but would sometimes go onshore to do laundry or sleep at a family member’s house.
 

 The trial court, in its Reasons for Judgment, found that Blanda was not in the
 
 *359
 
 course and scope of his employment or subject to the call of the vessel at the time of the accident. He further found that Blanda’s mother’s agreement with the company owners to allow Blanda to remain on the vessel during his 12 hours off did not rise to an enforceable contract with her that modified Blanda’s employment contract.
 

 We agree with the trial court’s finding that there are no material issues of fact in dispute and that the defendants were entitled to judgment as a matter of law. It is undisputed that Captain Mizell was not in the course and scope of his employment at the time of the accident. Captain Mizell clearly stated that he exercised no control over Blanda at the time of the accident and had merely agreed to give Blanda a ride in his personal automobile.
 

 |7Nor is it disputed that, at the time of the accident, Blanda had finished his 12-hour shift and was no longer “on the clock.” He considered himself free to leave the boat, as did his captain, given the fact that he had left the boat at the time of the accident and had done so several times in the past with the knowledge of his captain and Keith Savoie. These facts support the trial court’s conclusion that Mrs. Williams’ agreement with Savoie did not amend or change Blanda’s employment terms with KRT.
 

 The deposition testimony introduced into evidence shows that the only person who expected Blanda to remain on the boat during his 12 hours off was his mother. Blanda claims that a material issue of fact remains as to whether he and his mother had an agreement with the company that required him to stay on the boat during his off hitches. The record clearly shows otherwise. Although it is undisputed that Mrs. Williams had a conversation with Savoie about Blanda remaining on the boat during his off hitches, she characterized their conversation as an agreement
 
 requiring
 
 Blanda to remain on the boat. The testimony introduced shows that no one else, including Blanda, considered there to be such an agreement. Mrs. Williams was not a party to Blanda’s employment contract with KRT, as Blanda was over 18 at the time. Accordingly, the trial judge was correct in concluding that Mrs. Williams’s subjective impression of the agreement did not amend Blanda’s employment contract, nor does such subjective impression create a material issue of fact herein.
 

 Blanda argues in brief that he was forced to go ashore by the vessel’s disrepair (an “unseaworthy” condition) because the clothes washing machine on the boat did not work. He argues that he left the boat on a mission for the vessel, i.e., to do his laundry, and not because his shift had ended.
 

 IsThe deposition testimony introduced does not support this characterization of the facts. While it is undisputed that the washing machine on the boat was broken, the washing machine itself did not cause Blanda’s injuries. Also, there were no facts offered to suggest that Blanda was required to have clean clothes or a certain uniform in order to perform his job. The fact that he may have wanted to wash clothes, therefore, was a personal mission, not one for the vessel. Moreover, the testimony introduced was undisputed that all personnel who left the boat after their 12-hour shifts were free to do as they pleased, whether it be to do laundry or some other activity.
 

 CONCLUSION
 

 For the above reasons, we find that the trial court’s grant of summary judgment in this case in favor of KRT was correct.
 
 *360
 
 The trial court’s judgment is accordingly affirmed.
 

 AFFIRMED.